# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| In re: ) | |
| ) | |
| HAVENS STEEL COMPANY, ) | Case No. 04-41574 |
| ) | |
| Debtor. ) | |
| ) | |
| HAVENS STEEL COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Adversary No. 07-04067 |
| ) | |
| DRISCOLL/HUNT, a Joint Venture, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

The dispute presently before the Court arises out of the construction of Citizens Bank Park, a baseball stadium in Philadelphia, Pennsylvania that is the home of the Philadelphia Phillies, a National League baseball team with a long and storied history. The issue is whether the general contractor for the project may assert against the Debtor, Havens Steel Company, one of several subcontractors, certain claims that three other subcontractors have purportedly assigned to the general contractor.

Because the Court finds that the subcontractors' claims could not be validly assigned to the general contractor and cannot be allowed as "pass-through" claims, and because it finds that the purported assignments constitute champertous agreements not allowed by law, the Court will disallow $1,332,832.82 of Driscoll/Hunt's $5,160,316 claim against the Debtor's bankruptcy estate.

## STANDARD OF REVIEW

Summary judgment is appropriate when the matters presented to the Court "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[1] The party moving for summary judgment has the initial burden of proving that there is no

---

[1] Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056; *Celotex v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

genuine issue as to any material fact.[2]  Once the moving party has met this initial burden of proof, the non-moving party must set forth specific facts sufficient to raise a genuine issue for trial and may not rest on its pleadings or on mere assertions of disputed facts to defeat the motion.[3]

## FACTUAL BACKGROUND

The Court adopts the substance of the Debtor's statement of facts, which was uncontradicted by Driscoll/Hunt.

1. Driscoll/Hunt was the Construction Manager on the Phillies Stadium Project ("Project").
2. Driscoll/Hunt contracted with the Debtor for the erection of steel structures on the Project.
3. Driscoll/Hunt alleges the Debtor caused delays and other problems with the Project, which resulted in claims by other subcontractors against Driscoll/Hunt.
4. Driscoll/Hunt settled several of those claims by taking assignments of the subcontractor claims.
5. The Debtor's proportionate share of damages for the assigned claims ("Assigned Claims") was $1,332,832.82 based on information provided by the assignors/subcontractors.
6. Driscoll/Hunt filed a proof of claim against the Debtor in the amount of $5,160,316,[4] which includes the $1,332,832.82 in Assigned Claims.
7. The Assigned Claims arise from assignments accomplished through settlement agreements between Driscoll/Hunt and each of the three subcontractors, Fishbach & Moore, Electric, Inc. ("Fishbach & Moore"), Petrocelli Electric of New Jersey, Inc. ("Petrocelli"), and Mark/Lapore Contractors, A Joint Venture ("Mark/Lapore") (collectively, "Subcontractors").

---

[2] *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 161, 90 S. Ct. 1598, 1611, 26 L. Ed. 2d 142 (1970).

[3] *Matsushita Electric Industrial Co., Ltd., v. Zenith Radio Corp.,* 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (stating that the party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts").

[4] Driscoll/Hunt claims that this claim may be set off against the contract balance due to the Debtor (asserted by Driscoll/Hunt to be in the amount of $1,740,492) for the Debtor's work on the Project.

8. Relevant provisions of the agreement between Fishbach & Moore and Driscoll/Hunt include:

   a. Paragraph 5: "Subcontractor (F&M) does hereby assign and convey to Driscoll/Hunt any and all claims it has with respect to the Project."

   b. Paragraph 5(a): "Driscoll/Hunt shall pursue the claims being assigned to it by Subcontractor in good faith….Notwithstanding its obligation to pursue Subcontractor's claim in good faith, Driscoll/Hunt shall have full, complete and sole discretion to settle or discontinue the pursuit of any assigned claim(s) without advance approval by Subcontractor...."

   c. Paragraph 5(b) provides that if Driscoll/Hunt obtains a cash recovery against a third party on a claim assigned to it by Fishbach & Moore, the recovery shall be divided evenly between Driscoll/Hunt and Fishbach & Moore after reimbursing Driscoll/Hunt for legal fees and costs.

9. Relevant provisions of the agreement between Petrocelli and Driscoll/Hunt include:

   a. The sixth "Whereas" paragraph states that Petrocelli alleges that it has claims against Driscoll/Hunt for additional compensation due in excess of $5 million as a consequence of delay and disruption of its work caused by predecessor subcontractors on the Project.

   b. Paragraph 6 provides that Petrocelli assigns to Driscoll/Hunt all of the claims it has against any third party with respect to the Project, including but not limited to the Owner of the Project, design professionals, and any predecessor subcontractors. These claims include claims arising from delay or disruption of Petrocelli's work by the delayed completion of work of predecessor subcontractors.

   c. Paragraphs 6(ii) and (iii) provide for Driscoll/Hunt to receive the first net $500,000 recovery on claims assigned by Petrocelli, for Petrocelli to receive the second net $500,000 recovery, and for Driscoll/Hunt to receive the rest.

   d. Paragraph 6 also states that "Nothing herein shall be construed to obligate Driscoll/Hunt to pursue the claims being assigned to it by Petrocelli."

10. Relevant provisions of the agreement between Mark/Lapore and Driscoll/Hunt include:

    a. The fifth whereas paragraph states that Mark/Lapore alleges that it has claims against

        Driscoll/Hunt for additional compensation due in the amount of $145,674, as a consequence of delay and disruption of its work caused by predecessor subcontractors on the Project, and in particular caused by the failure of Carson/DePaul/Ramos to complete its work in a timely fashion.

   b.    Paragraph 6 provides that Subcontractor assigns and conveys to Driscoll/Hunt any and all claims it has with respect to the Project and that if Driscoll/Hunt pursues Mark/Lapore's claim and obtains a net recovery, then that recovery shall be allocated first to reimburse Driscoll/Hunt's legal costs and fees and the remainder to Mark/Lapore.

   c.    Paragraph 6 also states that "Nothing herein shall be construed to obligate Driscoll/Hunt to pursue the claims being assigned to it by [Mark/Lapore]."

11.    The Debtor did not enter into a contract with Fishbach & Moore, Petrocelli, or Mark/Lapore in connection with the Project.

12.    The assigned claims of Fishbach & Moore, Petrocelli and Mark/Lapore arising out the Project are solely for economic losses for delay or disruption attributed to other subcontractors.

13.    The Debtor was not a design professional with respect to the Project.

14.    In *Carson/DePaul/Ramos v. Driscoll/Hunt*, 2006 WL 2009047 (Pa. Commw. Ct. 2006), Driscoll/Hunt asserted claims against Carson/DePaul/Ramos on exactly the same assigned claims of Fishbach & Moore, Petrocelli and Mark/Lapore as Driscoll/Hunt asserts against the Debtor. The Court in that case ruled that Driscoll/Hunt's claim based on assignments from Fishbach & Moore, Petrocelli and Mark/Lapore failed for at least four reasons: (1) assignors had no claim against Carson/DePaul/Ramos to assign to Driscoll/Hunt because they had no contractual (or other) relationship with Carson/DePaul/Ramos that would enable them to make claims against Carson/DePaul/Ramos; (2) assignors had no negligence claim against Carson/DePaul/Ramos since their only claimed loss is economic and Carson/DePaul/Ramos is not a design professional; (3) Driscoll/Hunt paid nothing for the assigned claim to base a claim of loss against Carson/DePaul/Ramos ("Since Driscoll/Hunt has not paid anything to [Fishbach & Moore], Petrocelli or Mark/Lapore on their assigned

delay/disruption claims, Driscoll/Hunt has not suffered a loss for which it can claim indemnification from [Carson/DePaul/Ramos]."); (4) Driscoll/Hunt's agreements to share recovery with Fishbach & Moore and Petrocelli "skirt the edge of champerty."

15. Fishbach & Moore, Petrocelli and Mark/Lapore had no claims against the Debtor that they could assign to Driscoll/Hunt.

## DISCUSSION

The Debtor contends that the portion of Driscoll/Hunt's claim attributable to the Assigned Claims ($1,332,832.82) should be disallowed because (1) the assignments are invalid and "meaningless" because the Subcontractors never had any viable claims against the Debtor that could be assigned to Driscoll/Hunt, (2) even if the assignments are viewed as "pass-through" claims, pass-through claims are only valid against the property owner, not against other subcontractors, and (3) the agreements between the Subcontractors and Driscoll/Hunt are invalid champerty agreements because the agreements provide for Driscoll/Hunt to receive a portion of any recovery from the Debtor on the assigned claims.  Before the Court discusses these arguments in detail, a short discussion of the nature of "pass-through" claims will assist in understanding why the Assigned Claims are better examined as pass-through claims and why the Assigned Claims are not valid pass-through claims.

When a subcontractor on a construction project suffers damages as a result of the owner's conduct, such as a delay in furnishing materials or designs, under general contract principles a subcontractor cannot sue the owner because there is no privity of contract – the subcontractor shares privity only with the general contractor.  A "pass-through" claim is a way around that bar whereby the general contractor effectively sues the owner on behalf of the subcontractor.

Originally, there were strict limits on a general contractor's ability to assert a pass-through claim against an owner.  Under the so-called "*Severin* Doctrine," a general contractor could not sue an owner for a subcontractor's damages unless the contractor had incurred an actual liability to the subcontractor.[5]  However, the *Severin* Doctrine has been criticized as overly harsh, and subsequent decisions have severely circumscribed its holding, finding an exception "in practically every case

---

[5] *See Severin v. United States*, 99 Ct. Cl. 435 (1943).

where its application has been urged."[6]  Pass-through claims can now be sustained where the only liability borne by the contractor is a contingent liability to pay over any recovery to the subcontractor.[7]  The Court has not found, however, a case in which a contractor has successfully asserted a subcontractor's pass-through claim against another subcontractor.  In fact, other than *Carson/DePaul/Ramos v. Driscoll/Hunt*, the Court has not found any cases in which a contractor has even asserted such a claim.

The Court now turns to the substance of Debtor's arguments (and Driscoll/Hunt's counter-arguments).

### *The Assigned Claims are invalid as assignments*

It isn't clear why the Pennsylvania Court analyzed the Assigned Claims as assignments rather than as pass-through agreements.  Perhaps Driscoll/Hunt did not convince the State court that the Assigned Claims should be analyzed as pass-through claims.[8]  Or maybe it concluded summarily (and without explanation) that pass-through claims involve only claims against owners who are "up" the chain of privity from a subcontractor, and therefore the only way to analyze the Assigned Claims is as assignments.  In this case, it doesn't matter how they are analyzed because they are invalid either way.

To the extent that the Assigned Claims are analyzed under the general principles of assignment law, though, the Pennsylvania state court's analysis in *Carson/DePaul/Ramos v. Driscoll/Hunt* is right on target.  Interposing "the Debtor" for "Carson/DePaul/Ramos" is all that is necessary:

> The parties' arrangement is problematic for several reasons. The first problem is that F & M, Petrocelli and Mark/Lapore had no claims against [the Debtor] that they could assign to Driscoll/Hunt. *See Hedlund Mfg. Co. v. Weiser, Stapler & Spivak*, 517 Pa. 522, 525, 539 A.2d 357, 358 (1988) ("The first matter that a court must consider when ruling upon the viability of an assigned cause of action is whether the

---

[6] *Mitsui & Co. (U.S.A.), Inc. v. Puerto Rico Water Resources Auth.*, 528 F.Supp. 768, 781 (D. P.R. 1981). *See also, Continental Illinois Nat'l Bank & Trust Co. v. U.S.*, 112 Ct. Cl. 563, 81 F.Supp. 596, 599 (Ct. Cl. 1949) (noting that *Severin* was ill-advised and should be overruled).

[7] *Id.* at 781-82 (listing cases permitting pass-through claims based on contingent liability).

[8] Calling them "pass-through" claims instead of "assigned claims" might have helped.

assignor has a cause of action against the defendant in the case.") F & M, Petrocelli and Mark/Lapore had no direct contractual (or other) relationship with [the Debtor] that would enable them to bring claims against [the Debtor]. The only party with whom they had a contract was Driscoll/Hunt, so Driscoll/Hunt is the only party against whom they could assert their claims for delay/disruption. As a result, all that the subcontractors have done is assign their claims against Driscoll/Hunt to Driscoll/Hunt, which assignment is meaningless.[9]

Driscoll/Hunt argues, and the Court agrees, that Assigned Claims should be analyzed as pass-through claims, inasmuch as none of the cases has indicated that an agreement forming the basis for a pass-through claim has to be in a certain form, and the substance and context of Driscoll/Hunt's agreements with the Subcontractors indicate that the Assigned Claims were clearly intended to be (at least a variant of) pass-through claims. But a shift in perspective doesn't increase the viability of the Assigned Claims. This Court agrees with the Pennsylvania state court's analysis and holds that the purported assignments are invalid as assignments.

*The Assigned Claims cannot be maintained as pass-through claims*

The Assigned Claims fail as pass-through claims for the primary reason that they are not claims against an owner, who is higher up the chain of privity from the subcontractor and contractor. Rather, the Assigned Claims are subcontractor claims being asserted against a fellow subcontractor. The Court has not uncovered a single case (nor has Driscoll/Hunt presented any) recognizing a pass-through claim against anyone but an owner, and the rationale cited for the recognition of pass-through claims does not support an extension of the concept to include subcontractor-versus-subcontractor claims.

The rationale cited for the recognition of pass-through claims is grounded in notions of implied contract and unjust enrichment.

> The holdings [allowing claims for subcontracted work] are soundly based in reason and equity. They recognize that a direct claim by a subcontractor against [an owner] is barred by concepts of privity as well as contractual provisions such as here, and that if the contractor himself is barred from asserting those claims, the [owner]

---

[9] *Carson/DePaul/Ramos v. Driscoll/Hunt*, 2006 WL 2009047, *9 (Pa. Com. Pl. 2006) (citations included).

would be in the extraordinary position of being responsible to no one regardless of the nature or extent of its liabilities under its contract. No proper justification exists for such a result. Rather, the principle adopted by the cases is that the [owner] should be responsible to the contractor for costs or damages resulting from the performance or breach of the contract, whether the contractor performed the work himself or sublet it to others.[10]

Put simply, courts recognize pass-through claims to prevent an owner from benefiting from a subcontractor's work while escaping liability from any damages inflicted on the subcontractor as a result of the owner's own delay or error. "A contractor should be allowed to recover costs from the owner regardless of whether the contractor performed the work itself or through a subcontractor. Otherwise, the owner could receive a windfall because the subcontractor lacked privity with the owner and the contractor lacked standing to sue the owner for damages suffered by the subcontractor."[11]

Under this rationale, the Court does not believe it is appropriate to take the unprecedented step of recognizing pass-through claims against a subcontractor such as the Debtor. There was no implied contract between the Subcontractors and the Debtor, nor did the Debtor receive the benefit of any of the Subcontractors' work – only the owner (and perhaps Phillies fans) received that benefit.

***The Assigned Claims are void as champertous.***

An additional ground on which the portion of Driscoll/Hunt's proof of claim attributable to the assigned claims of Fishbach & Moore and Petrocelli can be disallowed is that assignment of Fishbach & Moore's and Petrocelli's claims to Driscoll/Hunt are void as champerty agreements.[12] The Pennsylvania state court noted that they "skirt the edge of champerty," and this Court agrees. "A champertous agreement is one in which a person having otherwise no interest in the subject matter of an action undertakes to carry on the suit at his own expense in consideration of receiving a share

---

[10] *Id.* (quoting *Buckley & Co., Inc. v. State*, 356 A.2d 56, 73 (N.J. Super. Ct. Law Div. 1975). *See also, United States v. Blair*, 321 U.S. 730, 737-38, 64 S.Ct. 820, 88 L.Ed. 1039 (1944) (stating same in context of contracts with the United States).

[11] *Interstate Contracting Corp. v. City of Dallas*, 135 S.W.3d 605, 616 (Tex. 2004).

[12] The agreement assigning Mark/Lapore's claim to Driscoll/Hunt is not champertous because that agreement provides that Driscoll/Hunt's entire recovery, less litigation costs, is to flow to Mark/Lapore, but the claim arising from that agreement is not viable for the other reasons stated above.

of what is recovered."[13] Here, Driscoll/Hunt has an interest in the "action" to collect Fishbach & Moore's and Petrocelli's assigned claims, but only to the extent that it is obligated to actually "pass-through" to Fishbach & Moore and Petrocelli any recovery it might receive from the Debtor. In other words, the Debtor has an interest in the litigation because the liability to Fishbach & Moore and Petrocelli, which is triggered by a recovery on the Assigned Claims, is simultaneously discharged by passing that recovery through to Fishbach & Moore and Petrocelli. However, to the extent the agreements permit Driscoll/Hunt to profit from the litigation against the Debtor, the agreements are champertous, and therefore, void as against public policy.[14]

## CONCLUSION

For the reasons stated above, the Court will grant the Debtor's motion for partial summary judgment and disallow $1,332,832.82 of Driscoll/Hunt's $5,160,316 claim against the Debtor's bankruptcy estate. This opinion constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 9014. A separate order consistent with this Memorandum Opinion shall be entered pursuant to Fed. R. Bankr. P. 9021.

**ENTERED** this 9th day of October 2007.

/s/   Jerry W. Venters
United States Bankruptcy Judge

Copy of the foregoing mailed electronically or
conventionally to:
Donald G. Scott
Mark A. Shaiken

---

[13] *Belfonte v. Miller*, 243 A.2d 150, 152 (1968).

[14] *See Brandywine Heights Area School Dist. v. Berks County Bd. of Assessment Appeals*, 821 A.2d 1262, 1266 (Pa. Cmmw. Ct. 2003).